**McKEEVER et al. v. FONTENOT, Collector of Internal Revenue.**

No. 9027.

Circuit Court of Appeals, Fifth Circuit.

June 6, 1939.

Lloyd J. Cobb and Morris Wright, both of New Orleans, La., and David Paine and George Koegler, both of New York City, for appellants.

Courtnay C. Hamilton and Sewall Key, Sp. Assts. to Atty. Gen., Jas. W. Morris, Asst. Atty. Gen., and Rene A. Viosca, U. S. Atty., and Leon D. Hubert, Jr., Asst. U. S. Atty., both of New Orleans, La., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

This appeal is from judgments for the defendant in three actions for the recovery of taxes collected for the transportation of petroleum products by pipe line, under the provisions of Section 731 of the Revenue Act of 1932, 47 Stat. 169, 275, 26 U.S.C.A. end c. 20. The transportation involved in each action being in the same system of pipes, and the only differences involved being the dates, parties, and amounts, the three cases were consolidated and tried as one. D.C., 25 F.Supp. 366.

Appellants were the owners of a large refinery at Destrehan, Louisiana, at the time of the movement for which each item of the tax was assessed. The refinery was located on a body of land belonging to the taxpayers, bordering on the Mississippi River. Petroleum was brought to the refinery in tank vessels or barges, and transferred therefrom to storage tanks located on the premises. Thereafter, it was processed by the refinery, and the finished products were stored on the premises. There were three methods of moving the finished products to market; by tank wagons, by tank cars, and by tank ships or barges on the river. All movements of petroleum or petroleum products into, out of, or within the plant were performed by pumping through a system of pipes connecting the refinery, the tanks, the loading racks for cars and wagons, and the wharf where ships and barges were served. In addition to the function of transportation, whether as a plant facility in connection with the refinery or otherwise, the pipes were sometimes used to blend different grades of petroleum products to meet certain specifications, the different grades being brought together from their respective receptacles at a T or manifold, and forced to flow together in one pipe for a considerable distance into a common receptacle.

All of the movements on which the tax has been levied were of finished petroleum products from storage tanks to vessels at the wharf. In some instances the blending process, mentioned above, was performed while the movement was in progress. It is conceded that the pipes in question were of the kind and character employed by pipe-line carriers. The tanks from which the products were moved, being thirty-seven in number, were located from 3,600 to 5,500 feet from the wharf. The same pipes were used for movements into and out of the plant, and for petroleum and its finished products.

Section 731 of the Revenue Act of 1932 imposes a tax equivalent to 4% of the amount paid for the transportation of crude petroleum or the liquid products thereof by pipe line. It further provides that in case no charge is made, either by reason of ownership of the commodity transported or for any other reason, a tax equivalent to 4% of a fair charge shall be

paid. Treasury Regulations 42, promulgated under the Act of 1932, Article 26,[1] provides that the term "all transportation" shall include transportation by private owner whenever the movement is substantially similar to movements which pipe-line carriers usually undertake and perform, if the movement is not merely local or incidental to another business or related business engaged in by the person so transporting, such as the producing or refining of said oil. Under this administrative interpretation of the act, it is conceded that, for the movements here involved to be subject to the tax, they must have been substantially similar to movements which pipe-line carriers usually undertake and perform. Brewster v. Gage, 280 U.S. 327, 336, 50 S.Ct. 115, 74 L.Ed. 457; Massachusetts Mutual Life Ins. Co. v. U. S., 288 U.S. 269, 53 S.Ct. 337, 77 L.Ed. 739; U. S. v. Dakota-Montana Oil Co., 288 U.S. 459, 466, 53 S.Ct. 435, 77 L.Ed. 893; Helvering v. R. J. Reynolds Tobacco Co., 305 U.S. ——, 59 S.Ct. 423, 83 L.Ed. 370.

The district court found as a fact that the movements taxed were substantially similar to movements which pipe-line carriers usually undertake and perform for hire. It further found that the movements taxed were not incidental to the refining of oil, but were movements which took place after all refinery processes had been completed and were movements toward market.

Appellants urge that, under Rule 52(a). of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, it is our duty to review the evidence upon which these conclusions of fact are based. Under the issues as made up in this court, the determinative question is whether or not the evidence supports the finding that the movements taxed were substantially similar to movements which pipe-line carriers usually undertake and perform. Aside from varying views of expert witnesses, the evidence on this point, while circumstantial and subject to interpretation, is without material conflict.

The movements taxed were from storage tanks to vessels. The essential character and purpose of such movement is that the petroleum products may be transported from the point at which they are at rest in storage tanks to another and distant geographical point where they may be used or stored for use. While we have not had the opportunity to review the legislative history of the act in question, the obvious purpose of taxing movements through privately owned facilities similar to those taxed against carriers is to avoid discrimination and the allowance of an increment of advantage, on account of the tax, to the private owners over those compelled to seek the services of carriers. However this may be, the language of the regulation, which now has the force and effect of law, is clear and unambiguous, in that it provides that movements substantially similar to those performed by pipe-

---

[1] Art. 26. Basis of Tax. The term "all transportation of crude petroleum and liquid products thereof by pipe line" includes any such transportation by a carrier, either public or private, whether or not transported for hire, and whether or not the commodity transported is owned by the carrier. It also includes the transportation by private owner whenever the movement is substantially similar to movements which pipeline carriers usually undertake and perform, if the movement is not merely local or incidental to another business or a related business engaged in by the person so transporting, such as the producing or refining of oil. Thus, where a refiner maintains a trunk line or a gathering line from a refinery to an oil field or pool, the services which the refiner performs for himself are similar to those which pipe-line carriers would otherwise render. The refiner, therefore, should pay the tax as though he had in fact employed the services of a carrier. If, on the other hand, the movement is from storage tanks to stills which are a part of the same manufacturing unit, or from wells to flow tanks or storage tanks situated in the immediate vicinity, the movement is not such as a pipe-line carrier would normally render and consequently is not subject to the tax imposed under section 731. The movement by pipe line from leased storage tanks to storage tanks such as are usually maintained in the immediate vicinity of a refinery, railroad siding, or boat wharf, is taxable.

The gathering service rendered in movements from lease storage tanks to storage tanks or receiving stations at the end of a stem or gathering line is subject to tax.

The transporting service rendered in movements from the end of the stem or gathering lines through a main or trunk line to a point of delivery is subject to tax.

Delivery service such as loading into tank cars or tank vessels by means of loading racks is subject to tax when rendered as a continuation or part of a prior taxable service.

line carriers shall be subject to the tax. In its narrowest aspect, the handling of the oil from tank to ship is a terminal movement, necessary to the mode of transportation elected by the owner or purchaser of the products.

To substantiate his position, appellee introduced tariffs and other evidence showing charges made for the use of their facilities by five carriers on movements from tanks to vessels. The charges in question ranged from 1½¢ per barrel, for a movement of 1.3 miles, to 2½¢ per barrel for a movement of slightly more than 3,000 feet. Thus it is established that these five pipe-line carriers undertake and perform a terminal movement, making a charge for the use of their facilities in doing so. There can be no doubt that the movement here involved is similar, if not identical, with the movements undertaken and performed by the carriers as reflected in their tariffs.

The fact that the pipes were used to perform a blending process should have no weight in the determination of this matter. Blending is essentially different from refining. In the latter, the different grades of petroleum products which are found mixed together in nature are separated and placed in separate storage. In blending, the reverse is true, different grades being mixed again to form a usable or desirable combination; but, aside from this, the tax is laid upon transportation, and, when this function is exercised, the fact that other results are accomplished simultaneously does not defeat the tax.

It appearing that the evidence supports the findings and conclusions of the district court, and that no error was committed, its judgments are affirmed.