REPUBLIC OIL REFINING CO. v.
GRANGER.

No. 10602.

United States Court of Appeals
Third Circuit.

Argued March 17, 1952.

Decided June 27, 1952.

McLaughlin, Circuit Judge, dissented.

Lyle M. Turner, Washington, D. C. (Ellis N. Slack, Acting Asst. Atty. Gen., A. F. Prescott, Sp. Asst. to Atty. Gen., Edward C. Boyle, U. S. Atty., on the brief), for appellant.

Edgar J. Goodrich, Washington, D. C. (Jerome J. Dick, Washington, D. C., C. W. Campbell, J. Vincent Burke, Jr., Pittsburgh, Pa., Guggenheimer, Untermyer, Goodrich & Amram, Washington, D. C., Campbell, Houck & Thomas, Pittsburgh, Pa., on the brief), for appellee.

Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

A Collector of Internal Revenue has taken this appeal from a judgment of a district court upholding a claim of the Republic Oil Refining Company for the refund of excise taxes, paid by it between 1942 and 1946 on transportation of oil by pipe line under Section 3460 of the Internal Revenue Code, 26 U.S.C. § 3460 (1946 ed.). We find it necessary to consider only whether, in the circumstances of this case, movements of petroleum between storage tanks at taxpayer's refinery and tanker ships at a nearby dock are exempt from taxation by force of the provision of Section 3460(c) which excludes movements "within the premises of a refinery" from the category of taxable transportation.[1]

The controversy concerns a crude oil refinery located in Texas City, Texas and owned by the taxpayer, a Texas corporation with its principal place of business in Pittsburgh, Pennsylvania. This refinery includes the numerous and extensive installations required for preliminary fractionization, catalytic cracking, thermal cracking, polymerization, and other processes involved in the manufacture of a great range of petroleum products, including gasolines, kerosene, fuel oils and solvents. The blending of distillates to meet particular specifications of customers is also a phase of the plant operation and involves the utilization of numerous large tanks, appropriately dispersed over a considerable area, which serve both for blending and for storage.

These manifold and varied refining processes are carried out on several irregularly shaped contiguous or closely neighboring tracts descriptively entitled the main refinery tract, a part of the Southport Republic tract, the North and West tank farms, and the South tank farm. The entire complex is integrated by pipe lines through which the various products are pumped to and from manufacturing and storage installations. The aggregate acreage of these tracts is not given but a scale drawing in evidence indicates that the total area must be more than a square mile. The Collector concedes that all of this land is part of the premises of the refinery so that movements of oil therein are tax free. However, the Collector has taxed pipe line movements over a strip of land which extends about half a mile from the eastern boundary of the above described area to the sea. Disagreeing with the Collector the district court ruled that this movement was still "within the premises of a refinery" and tax free.

The record shows that in 1940, following an earlier lease, the taxpayer acquired by

---

1. In relevant part Section 3460 reads:

"(a) Computation and payment.

"There shall be imposed upon all transportation of crude petroleum and liquid products thereof * * *

"(1) A tax * * *.

&ast; &ast; &ast; &ast; &ast;

"(c) Exempt transportation.

"For the purposes of this section, the term 'transportation' shall not include any movement through lines of pipe within the premises of a refinery, a bulk plant, a terminal, or a gasoline plant, if such movement is not a continuation of a taxable transportation. The crossing of rights-of-way, streets, highways, railroads, levees, or narrow bodies of water, in connection with such a movement, shall not of itself constitute such movement as being 'transportation' ".

It is conceded that the movement in question here is not "a continuation of a taxable transportation".

deed certain perpetual rights-of-way in and over this half mile strip of land which separated its principal holdings from the sea. The district court found, and it is not disputed, that under Texas property law the rights thus acquired became easements appurtenant to taxpayer's adjoining land and as such constituted an interest in land and an inherent part of the premises to which appurtenant.[2] Taxpayer has used these easements to support pipe lines which convey crude oils from tankers in dock to the refinery tanks and refined petroleum products back to tankers. The pipe lines are owned, operated and used exclusively by the taxpayer. Oil is moved from ship to shore by shipboard pumps and from shore to ship by taxpayer's own pumps, installed within the admitted area of the refinery premises.

In addition, blending is accomplished in these lines. Different incoming crude oils are pumped into a single pipe line to make a blend of natural products desired in manufacture. Similarly, different distillates are often pumped into a single outgoing line to make a blend in accord with customer specification. This blending en route is undertaken about twenty percent of the time the lines across the easement are in use. Although it was found impossible to ascertain the exact distance required to complete the blending process, the length of these lines was determined to be sufficient for that purpose. And blending, upon the uncontradicted testimony of expert witnesses, was found by the trial judge to constitute an intrinsic step in the refining process.

In determining whether movement of oil over the easement thus described was movement within the premises of a refinery, the district court gave decisive force to the property law of the situs, Texas, reasoning that an easement appurtenant deemed a part of the refinery premises by and for the purposes of local property law should for that reason also be deemed a part of "the premises of a refinery" as that phrase is used in the federal taxing statute.

We think the Texas property law is a relevant consideration but not in itself controlling. Our task is to construe and apply the language of a federal statute. The state law characterization of property may aid in our determination whether a local situation falls within the federal statutory concept but it cannot reveal what that concept is or narrow or enlarge the meaning of the words used by Congress. Cf. Lyeth v. Hoey, 1938, 305 U.S. 188, 193, 59 S.Ct. 155, 83 L.Ed. 119.

Under the taxing statute as it existed prior to 1942,[3] the tests of taxability had been whether the movement of oil was " * * * substantially similar to movements which pipe line carriers usually undertake and perform, if the movement is not merely local or incidental to another business engaged in by the person so transporting, such as the producing or refining of oil", Art. 26 Treasury Regulations 42 (1932 ed.). In practice the application of these criteria was likely to be complicated. Thus, it would be necessary to determine first of all whether the movement, though within an area used for refining, was such as pipe line carriers would perform, and, if it was, to determine also whether the movement was merely local or incidental to the business of refining. Of course, taxability of movements outside refining centers would be subject to the same plural factual criteria. Common sense, however,

2. For a history of the real estate transactions whereby taxpayers acquired its present property interests in the land upon which its refinery and pipe lines are located, and for a discussion of the Texas property law pertinent thereto, see the opinion of the court below reported at, D.C.W.D.Pa.1951, 98 F.Supp. 921 (passim).

3. 40 Stat. 300, 315 (1917), re-enacted 40 Stat. 1057, 1102 (1919), and repealed 42 Stat. 227, 320 (1921). The pipe line tax was again enacted in 1932, 47 Stat. 169, 275, 26 U.S.C.A.Int.Rev.Acts, page 636, its coverage this time extending to liquid petroleum products as well as crude oil. Except for rate amendments and the 1942 exemption the taxing language of that year has not been altered in any material respect.

indicates that in most cases movements within premises used for refining are for refinery purposes and movements beyond that site are movements to market. Thus, if taxability were made to depend upon a single spatial consideration, namely, whether movement was within or without the refinery premises, a relatively simpler test would serve substantially the same purpose as the more complex earlier Treasury rule. This we think is what the 1942 addition of subsection (c) to Section 3460 accomplished.

Specifically, we think the phrase "premises of a refinery" was used to designate and comprehend whatever property and area might reasonably be connoted by or described in terms of a particular localized industrial operation. Only in the unusual case such as we have here is the extent of the refinery premises hard to determine. But in any event, what is reasonably described as the refinery premises or the "premises of a refinery"—to us the use of "refinery" is simply adjectival and descriptive, and the phrases seem equivalent and interchangeable—is essentially a question of fact to be decided in all the circumstances of the particular case.

■ The matter of title or ownership, which in this case reveals the legal appurtenance of servient to dominant tenement, is a significant fact, helpful in determining whether the taxpayer's claim that the disputed easements constituted a part of the refinery premises is a reasonable one. However, there are additional relevant considerations. The refinery premises and the operation they supported were admittedly very large, so that the claimed incorporation therein of the relatively much smaller easement area did not create an appearance of disproportion. Moreover, the court found that about twenty percent of the time the lines installed across the easements appurtenant were used for the blending of oils which itself "is a distinct and inherent step in the refining process". [98 F.Supp. 939.] Beyond this, the court found that "These liens are an integral part of plaintiff's plant installations and the movements

through these lines are incidental and necessary to the operation of the refinery and are not such as are usually performed by a pipe line carrier". This last finding is supplemented by a further finding that practical considerations limited this type of pipe line operation to a distance of not more than a mile or two. Most of these findings are unchallenged and certainly none of them is clearly wrong.

In these circumstances the use made of the easement and its economic relation to the refinery, its extent and physical relationship to the refinery, and its ownership and legal relation to the refinery all combine to make reasonable a conclusion of the fact finder which identifies it with the premises of the refinery. This is not to say that such identification was mandatory. We say only that it is not unreasonable and, therefore, was permissible. The appellant has not convinced us that on the facts of this case the conclusion of the district court should be set aside as clearly wrong.

The judgment will be affirmed.

McLAUGHLIN, Circuit Judge (dissenting).

The district court held that the movements of crude petroleum from wharves to the appellee's refinery and movements of refined petroleum from the refinery to the wharves are exempt from the federal transportation tax as movements within the premises of a refinery. The reason given in the majority opinion for affirming the judgment is that "The appellant has not convinced us that on the facts of this case the conclusion of the district court should be set aside as clearly wrong."

The court below decided as a matter of law that the definition of the word "premises" in the exemption from the taxing statute was dependent upon Texas law; that under Texas law the easements in question were part of appellee's refinery premises; that those premises extended to and onto the docks and that "Under Section 3460(c), *therefore, the movements of oil over these easements appurtenant are within the premises of the refinery and*

*exempt from taxation.*" [1] (Emphasis supplied). 98 F.Supp. 921, 940–941.

The majority opinion holds that whether the easement controlled lands through which the pipe lines ran were part of the refinery premises was a question of fact. The opinion then implies that the fact question was decided by the district judge. On this the opinion reads: " * * * all combine to make reasonable a conclusion of the fact finder which identifies it [the easement] with the premises of the refinery." But the conclusion of the fact finder was the above conclusion of law. He never did find as a fact that the easement land was within the refinery premises. With "loading" out of the case[2] the judgment below rests solely on the above quoted conclusion of law. That conclusion is wrong. The pertinent federal statute, Section 3460 of the Internal Revenue Code [3] neither requires resort to state law nor gives the slightest reason expressly or impliedly for so doing. Under those circumstances the federal tax question presented by this appeal is a matter of federal law. It is definitely not subject to whatever the law of Texas may be as to the nature of easements.[4]

The "blending" referred to in the majority opinion is the physical mixing of two or more kinds of crude petroleum or of refined petroleum products. This can be accomplished by pumping the products from tank to tank; during transportation by pipe line and in loading tankers by pouring the desired products into the same compartment and permitting the motion of the vessel to take care of the necessary mixing. The district court held that blending was a distinct and inherent step in the refining process. Such blending, as decided by the district court, did not take place in the pipe lines more than 20% of the time the incoming crude oil and the outgoing refined products were present in the lines. It follows that, on the district court's own finding, during four-fifths of the time the oil and oil products were in the pipe lines there was no blending whatsoever. The court also found that it was impossible to determine when the blending starts in the pipe lines and when it ends, and the court went no further than to say that 1500 feet, the distance from the docks to appellee's nearest tanks, was " * * * long enough to allow the blending to take place." On those findings, which were based on appellee's contention, the blending process had been completed and transportation of the blended product begun while its movement continued in the pipe line. And I think it plain that the mixing or blending in the pipe lines for the 20% of the time as found by the district court was, with reference to the incoming crude oil, a collateral result obtained during the transportation of such oil from the ships across the leased territory in the pipe lines to the refinery. As to the petroleum products en route to tankers at the wharves,

1. As to this the district judge said in his opinion, 98 F.Supp. at page 932, " * * * it is my considered judgment that under the law of Texas the said easements are part of the 'premises.' "

2. The district court also found that the movement of oil was purely a loading movement not in connection with taxable transportation of oil by pipe line and " * * * therefore, exempt from tax under Treasury Regulation 42, Sections 130.21 and 130.22." Since no effort is made to sustain that conclusion in the majority opinion it need not be here discussed at length. It is enough to say that loading under Treasury Regulation 42, Section 130.22 does not include the movement to or from the point where the loading takes place. Loading is the operation over the "loading wharves" or "loading racks" as detailed in the Regulation. Cf. Magnolia Petroleum Co. v. United States, 53 F.Supp. 231, 101 Ct.Cl. 1, certiorari denied 323 U.S. 721, 65 S.Ct. 53, 89 L.Ed. 580.

3. As amended by the Revenue Act of 1941, c. 412, 55 Stat. 687, Sections 502 and 521(a) (22), and by the Revenue Act of 1942, c. 619, 56 Stat. 798, Section 616.

4. Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77 L.Ed. 199; Lyeth v. Hoey, 305 U.S. 188, 193, 59 S.Ct. 155, 83 L.Ed. 119; Morgan v. Commissioner, 309 U.S. 78, 626, 60 S.Ct. 424, 84 L.Ed. 585, 1035; Koppers Coal & Transportation Co. v. United States, 3 Cir., 107 F.2d 706, 708.

the blending was an incident in the operation of moving those products to market. Even if the pipes were used for blending throughout their full length and during the entire time the oil and its products were in them, as said in McKeever v. Fontenot, 5 Cir., 104 F.2d 326, 329, certiorari denied 308 U.S. 588, 60 S.Ct. 113, 84 L.Ed. 492, " * * * the tax is laid upon transportation, and, when this function is exercised, the fact that other results are accomplished simultaneously does not defeat the tax."

Appellee had the burden of proving that its claimed exemption was clearly within the statute. United States v. Stewart, 311 U.S. 60, 71, 61 S.Ct. 102, 85 L.Ed. 40; Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 49, 61 S.Ct. 109, 85 L.Ed. 29; Heiner v. Colonial Trust Co., 275 U.S. 232, 235, 48 S.Ct. 65, 72 L.Ed. 256. To be absolved from the tax it had to show that the movement of the crude oil into the refinery from the ships through the pipe lines and the movements of the refined products from the refinery to the dock side tankers were " * * * movements within the premises of the refinery." The appellee has failed in that task. The district court judgment should be reversed.