UNITED STATES of America, Appellant,

v.

PAN AMERICAN REFINING CORPORATION, Appellee.

No. 15089.

United States Court of Appeals, Fifth Circuit.

Feb. 24, 1955.

Karl Schmeidler, Ellis N. Slack, Hilbert P. Zarky, Sp. Assts. to Atty. Gen., H. Brian Holland, Asst. Atty. Gen., Malcolm R. Wilkey, U. S. Atty., Charles B. Smith, Asst. U. S. Atty., Houston, Tex., for appellant.

Griffith D. Lambdin, Fine G. Bedford, V. W. McLeod, Galveston, Tex., Wigley, McLeod, Mills & Shirley, Armstrong, Bedford & Lambdin, Galveston, Tex., of counsel, for appellee.

Before BORAH and TUTTLE, Circuit Judges, and DAWKINS, District Judge.

TUTTLE, Circuit Judge.

This is an appeal by the Government from a judgment of the District Court entered in a trial without a jury in favor of the Pan American Refining Corporation and against the United States in a suit for refund of petroleum transportation taxes alleged to have been illegally collected. The former Collector of Internal Revenue having resigned, this suit was properly brought against the United States under the authority of 28 U.S.C.A. § 1346(a) (1).

The tax was assessed by the Commissioner of Internal Revenue under the provisions of 26 U.S.C.A. § 3460.[1] The movements involved were between the

---

1. "§ 3460. Tax

"(a) [as amended by Secs. 502 and 521 (a) (22) of the Revenue Act of 1941, c. 412, 55 Stat. 687] Computation and payment. There shall be imposed upon all transportation of crude petroleum and liquid products thereof by pipe line—

"(1) A tax equivalent to 4½ per centum of the amount paid for such transportation, to be paid by the person furnishing such transportation.

"(2) In case no charge for transportation is made, either by reason of ownership of the commodity transported or for any other reason, a tax equivalent to 4½ per centum of the fair charge for such transportation, to be paid by the person furnishing such transportation.

"(3) If (other than in the case of an arm's length transaction) the payment for transportation is less than the fair charge therefor, a tax equivalent to 4½ per centum of such fair charge, to be paid by the person furnishing such transportation.

"(b) Fair charge defined. For the purposes of this section, the fair charge for transportation shall be computed—

"(1) from actual bona fide rates or tariffs, or

"(2) if no such rates or tariffs exist, then on the basis of the actual bona fide rates or tariffs of other pipe lines for like services, as determined by the Commissioner, or

"(3) if no such rates or tariffs exist, then on the basis of a reasonable charge for such transportation, as determined by the Commissioner.

Pan American Refining Corporation's fee-owned, fence-enclosed tract of some 500 acres, through pipe lines owned by Pan American laid on rights of way acquired as easements some 1½ to 2½ miles through a highly industrialized area of Texas City, Texas, to a leased dock-site of 1½ acres (held under 50-year lease by Pan American), such movements being both incoming crude from ship and barge and outgoing refined products loaded on ship and barge.

The Government based its right to tax these movements on the proposition that (1) this was "transportation of crude petroleum and liquid products thereof by pipe line" within the language of § 3460(a); (2) that, since no charge for transportation was actually made (since the movement was entirely handled by Pan American and not by any carrier) the movements came within paragraph (2) of § 3460(a). The Commissioner rejected the idea that the movements were exempt under § 3460(c) as being within the term "any movement through lines of pipe within the premises of a refinery * * * not a continuation of a taxable transportation."

The taxpayer contended, and the trial judge agreed, that the movements were not taxable, relying principally on the amendment to the statute enacted in 1942, but also on the finding that the movements here in question were not "substantially similar to those by pipe line carriers." These two circumstances, i. e., the exemption created in § 3460(c) and the finding of fact that the movements were not "substantially similar," the court found to require a distinction from the case of McKeever v. Fontenot, 5 Cir., 104 F.2d 326, and to cause it to follow the holding in Republic Oil Refining Co. v. Granger, 3 Cir., 198 F.2d 161.

The facts with respect to the physical lay-out of the properties, their acquisition as a part of an integrated plan, their connections and operations were fully and ably set out by the court below in its well-considered opinion [2] and will not be repeated fully here. However, it is necessary for an understanding of our discussion that some of these facts be repeated.

In 1933 appellee, having determined to build a refinery having access to deep water transportation, purchased a tract of land in fee consisting of some 400 to 500 acres situated 1½ to 2½ miles from the harbor line at Texas City, Texas. It also leased a tract of 1.01 acres along the waterfront referred to as "docksite" and acquired easement rights over the property in between, called the "easement corridor." All three types of property were acquired, as the trial court found, as an integral part of appellee's program to construct and operate its refinery. On the fee property it constructed a large refinery, erected storage tanks, loading and unloading facilities on the dock-site and laid pipe lines to the refinery through which crude was transported to the refinery and refined products from the refinery to the docks where they were delivered on shipboard.

Delivery of crude from the tankers was accepted as complete at the dock, and in turn, delivery of the finished products was also made and accepted only from the dock. Appellee constructed facilities at the dock-site for pumping the crude from barges which had no pumping power, but the tankers propelled with their own pumps, by use of an appropriate connection, the crude through appellee's pipe lines to the refinery tanks, an average of some two miles from the dock.

"(c) [as added by Sec. 616 of the Revenue Act of 1942, c. 619, 56 Stat. 798] Exempt transportation. For the purposes of this section, the term 'transportation' shall not include any movement through lines of pipe within the premises of a refinery, a bulk plant, a terminal, or a gasoline plant, if such movement is not a continuation of a taxable transportation. The crossing of rights-of-way, streets, highways, railroads, levees, or narrow bodies of water, in connection with such a movement, shall not of itself constitute such movement as being 'transportation.'"

2. D.C., 119 F.Supp. 698.

Some 2,000 feet northeast of appellee's refinery Stone Oil Company, another corporation, also erected a refinery and was allowed to connect its pipe line to appellee's in the corridor about mid-way between the docks and refinery, which allowed it to use appellee's pipes for the same purpose of receiving crude and shipping its finished products. In 1948 appellee bought the Stone Refinery. Transportation taxes upon all crude and refined products transported through the corridor for the years 1942–47 and a part of 1943 were paid by appellee under protest and this suit for refund followed on the contention that the tax was not due.

During the trial the Government conceded that movements between the main fenced-in single tract originally occupied by Pan American and the Stone tract, some 2,000 feet distant, were not subject to the tax. These movements were in all respects similar to the movements to the docksite which the Commissioner claims to be taxable except for the greater length of the latter.

Prior to the amendment of 1942, which added the exemption in paragraph (c), the test of taxability, when the movement was by the refiner and not by a carrier, was based on the courts' construction and application of Treasury Regulation 42, Art. 26, paraphrased " * * * 'all transportation' shall include transportation by private owner whenever the movement is substantially similar to movements which pipe line carriers usually undertake and perform, if the movement is not merely local or incidental to another business or related business engaged in by the person so transporting, such as to the producer or refiner of said oil." The courts' opinions construing this Regulation had finally settled upon a formula that the transportation was taxed if it was "substantially similar to movements which pipe line carriers usually undertake and perform" and if it was not a step in the "refinery process." [104 F.2d 328.]

In McKeever v. Fontenot, supra, the taxpayer owned a solid body of land fronting on the Mississippi River on which a large refinery was built, including tanks into which the crude was pumped from tankers, barges, etc. The transportation tax, Sec. 731, Revenue Act of 1932, 47 Stat. 169, 26 U.S.C.A. §§ 3460, 3461, was imposed only on the finished petroleum products from storage tanks (some 37 in number) to vessels at the wharf, distances ranging from 3,600 to 5,500 feet. In that case we construed the applicable Act of 1932 and the Treasury regulations made thereunder, particularly No. 42, discussed above. We noted as determinative in that case that the lower court had found the movements from storage tanks to vessels were "substantially similar to [those] by pipe line carriers," and "were not incidental to the refining of oil, but were movements which took place after all refinery processes had been completed and were movements toward market." We concluded that the facts sustained the lower court's findings that the transportation was "substantially similar to" those by pipe line carriers. Based on this finding we affirmed the trial court's judgment that the transportation from the storage tank to the ship loading platform was taxable even though the pipe lines there involved were located entirely on the fee-owned contiguous tract occupied by the refinery. The distance involved was a maximum of approximately one mile.

■■ Here, however, the trial court made an opposite finding of fact as to the movements of the Texas City refinery of appellee.[3] Thus, even if, as the Government here contends, there had been

---

3. "Counsel for the Government makes much of the fact that there are instances, reflected by published tariffs and other documentary evidence, where transportation services of this character are furnished by common carrier pipe lines. Undoubtedly this is true, and I suspect that had plaintiff and its neighbor Republic been unable to acquire the necessary easements between their fee premises and the water front, some common carrier pipe line, with the right of eminent domain, would have made these services available. But the fact that under other

no liberalization of the definition of "transportation" by reason of the enactment of paragraph (c) by the amendment of 142, it is highly questionable whether this court could hold that the movements here in issue were taxable, in the face of the express findings by the trial court. The court's findings in these respects were clearly supported by the evidence. In fact, it is quite difficult to comprehend how a carrier other than the refinery company itself could handle this type of movement. To be sure, movements of equal or even less distance unquestionably can be handled by common carriers, but that is quite different from a movement, as is here involved, between several installations of the refinery owner. As the trial court said, it was not "the type of service normally and customarily performed by common carrier."

Next we turn our attention to the express exemption contained in paragraph (c). In its zeal to discover a congressional purpose and a construction supporting the taxability of movements of the type here involved, the Government finds itself in a serious inconsistency, arguing extensively both in its brief and in oral argument that the exemption paragraph enacted as paragraph (c) was intended as a further restriction rather than as a liberalization of the definition of "transportation." The Government nevertheless concedes, and rightly so we think, in its reply brief that "the movements involved in the McKeever case, supra, would now be exempt because they took place entirely within the area in which refining occurred." This concession is completely inconsistent with the other argument which in effect is that in order to be excluded the movement must satisfy the requirements of the former Treasury Regulations as construed by

the courts to mean that they were not "substantially similar" to movements which pipeline carriers usually undertake and that they were "incidental to the refinery processes" and that they must also be found to take place "within the premises of a refinery." Since, in the McKeever case, the court specifically found that the movements there constituted "transportation" under the existing statute and regulations, then, if the movements involved in McKeever would now be exempt, as conceded by the Government, it must follow that this exemption would arise only because such movements as are "within the premises of a refinery" were intended by the amendment to be excluded even though they constituted "transportation" as otherwise contemplated in the statute.

However, we think it clear, without reference to the Government's concession, that the amendment was intended to liberalize the definition of "transportation." No legislative history, in the usual sense, is available to aid the courts in construing the language of paragraph (c). This leaves the court with the duty of taking the language and giving to each of the phrases contained in the amendment the ordinary meaning in the light of existing legislation and existing court interpretations of the statute. It would have been difficult for Congress more clearly to have expressed the intent to remove from taxable transactions all movements of oil through lines of pipe within the premises of the refinery than by the choice of the language embodied in paragraph (c). The exemption paragraph specifically refers to and thus defines the very term "transportation" which had theretofore been the subject of numerous court decisions, the language being "For the purposes of this

circumstances some common carriers do furnish the service is not sufficient to convince me that it is the type of service normally and customarily performed by common carrier. On the contrary, I find that it is normal and customary for such transportation as is in issue here to be handled by the taxpayer, or one in its position, as an incidental part of its

over-all refining operation; it is more economical and practical for it to be handled by ordinary refinery personnel; and that the services of a common carrier are availed of only when the circumstances demand it. When the distance for such movement exceeds about five miles, the reverse is true." 119 F.Supp. 698, 704.

section, the term 'transportation' shall not include any movement through lines of pipe within the premises of a refinery * * *." It is difficult to see how it can seriously be argued that this exemption should be construed to mean that even though a movement was through lines of pipe within the premises of refinery, it would nevertheless constitute "transportation" for the purpose of this section unless it was also exempt under the standards of construction then current by virtue of existing Treasury Regulations and court decisions.

 Moreover, it is clear that the Treasury Department, acting through the Acting Secretary, considered that this amendment worked a liberalization in the definition of "transportation." Although the Government, in its brief, stated, "The Congressional history of Section 3460(c) provides very little explanation of the reason for the adoption of the amendment," the brief devoted five pages to the thesis that the introduction by individual members of Congress of proposed amendments that might have had an even more liberalizing effect, establishes some sort of legislative history to which weight should be given in our construction of the language of the Act which was finally passed. We agree with the Government's initial statement that there is no significant legislative history to aid in the construction of this legislation. In its recitation, however, the Government's brief includes a letter addressed by the Acting Secretary of the Treasury to the Chairman of the Ways and Means Committee of the House of Representatives, which we deem quite significant if the views of the department having the duty of administering the statute involved were necessary as an aid to our construction of the meaning of the law. The Acting Secretary's letter [4]

clearly shows that in the opinion of the Treasury Department the definition of "transportation" was working inequities in the light of the McKeever decision, and that such inequities should be eliminated. Such a view is of course inconsistent with a contention that there was no intent to modify the definition of "transportation."

We should now consider whether even though the movements here involved would not be exempt under the statute prior to the 1942 amendment, the movements are nevertheless exempt by virtue of paragraph (c).

The Court of Appeals for the Third Circuit, in Republic Oil Refining Co. v. Granger, 198 F.2d 161, has held that similar movements are exempt by reason of their falling within the language of paragraph (c). In fact the movements involved in the Republic case are in the same neighborhood as, and actually parallel, the movements that are here in question, since the Republic Oil Refinery Company is a neighbor in Texas City of Appellee. More than ordinary consideration should therefore be given to the decision of that court. On this phase of the question, very little more need be said beyond the carefully reasoned opinion of Judge Hastie, speaking for the majority of that court.

It must be conceded we think that the words "within the premises of a refinery" have no definite legal meaning. We agree with the opinion of the Third Circuit that technical rules applying to real estate holdings are not controlling. However, all parties here concede that the easement corridors occupied by appellee's pipe line are appurtenant to the fee-owned property, and there can be no question but that the docksite held under a fifty-year lease loses none of its characteristics as "premises" merely because it is

4. "Since the decision in the case of Mc-Keever v. Fontenot, 5 Cir., 1939, 104 F. 2d 326, certiorari denied 1939, 308 U.S. 588, 60 S.Ct. 113, 84 L.Ed. 492, the Bureau of Internal Revenue has been constrained to collect the tax even with respect to movements of oil by pipe line between a refinery and loading wharves

which are entirely upon the property of a taxpayer. The proposed legislation would eliminate existing inequities, yet, if certain slight alterations in language are made, would retain well-defined standards for administration of the tax on transportation by pipe line."

held under lease instead of being owned in fee. The Government's contention, therefore, on this branch of the case, as is clearly indicated by its concession relating to the McKeever type situation, comes to this: If the refinery installation comprises a single contiguous, plainly marked tract of land to which the taxpayer owns full rights to possession, movements of petroleum products from ship to refinery and from storage tank to ship are exempt from taxation, even though the closest installation dealing with the actual refining function is as much as 5500 feet from the ship; whereas if the machinery and equipment relating strictly to the refinery function is on a well defined contiguous tract, which is at a distance from the ship of more than would be represented by the "crossing of rights-of-way, streets, highways, railroads, levees, or narrow bodies of water," such movements are taxable, if such movements take place along easements connecting the tract to refinery owned docks, even though tract, easement and dock were all acquired and developed for the purpose of establishing a refinery having access to deep water. We think that within the context of the statute as it stood before the McKeever decision, the language adopted by Congress in paragraph (c) was not intended to create such an unnatural distinction but was intended rather to exclude from the term "transportation" local movements controlled by a refinery as a part of its integrated refining and loading operation so long as they occur in its premises, however owned.

■ The difficulty of applying any different standard is apparent from the lack of uniformity in treatment by the Commissioner. It will be noted that in the McKeever case the Commissioner did not seek to tax the inflow of petroleum products, although no logical distinction can be perceived why this would not be "transportation" in the same way as was the delivery from refinery to ship which was taxed in McKeever. It will also be noted that in this case below the Commissioner conceded that movements be-

tween the fee-owned tract originally occupied by Pan American and the fee-owned tract originally owned by Stone Refining Company, a distance of some 2000 feet, were exempt from the tax, after appellee bought the Stone property. These movements were through pipe lines along easement corridors identical with the movements along the easement corridors from the main Pan American fee-owned tract to the docksite, and as the trial judge properly found the exemption of this movement by the Commissioner was clearly inconsistent with his insistence on the taxability of the other movements. The rule announced in the Republic case and as applied by the trial court here, makes possible a more uniform application of the statute than would be possible under the construction urged on us by the Government. This is also of persuasive effect in supporting our opinion that the judgment of the trial court clearly carried out the intent of Congress.

The judgment is

Affirmed.

DAWKINS, District Judge, concurs in the result.