**PORT FUEL COMPANY, Inc.,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

Civ. A. No. 859.

United States District Court
S. D. Texas, Brownsville Division.
June 1, 1955.

---

Kelley, Looney, McLean & Littleton, Edinburg, Tex., for plaintiff.

Malcolm R. Wilkey, U. S. Atty., John C. Snodgrass, Asst. U. S. Atty., Houston, Tex., H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Edward W. Rothe, Sp. Assts. to the Atty. Gen., for defendant.

ALLRED, District Judge.

Action for refund of petroleum transportation taxes, alleged to have been illegally collected under the provisions of 26 U.S.C.A. § 3460, covering taxable periods from November 1, 1947 to April 30, 1951. Practically all of the facts are stipulated (P.Ex. 1). Taxability of five different movements of oil by pipeline is in controversy. These movements will be referred to as A, B, C, D, and E.

On May 1, 1946, plaintiff took a long term lease from Brownsville Navigation District (hereafter called District), covering 5 acres of land (hereafter called the Main Site), to be used for the construction of storage tanks and operation of a refinery. Incidental to the lease plaintiff was given the right to install

pipelines over other land owned by the District. The refinery was constructed on the Main Site in 1947.

On August 1, 1948, Texas Petroleum Trading Company (a partnership of plaintiff's owners, operating as an affiliate of plaintiff) leased to the District 4.36 acres, about 2,000 feet from the Main Site, for the purpose of constructing a storage terminal and tank farm for use of the refinery since there was no more room on the Main Site for these facilities. The lease also granted the right to install pipelines over other lands owned by the District in order to connect with the District's oil dock facilities, for the use of which plaintiff agreed to, and did, pay the published port tariff rates. This lease was assigned to plaintiff June 9, 1949. Six storage tanks were erected on this 4.36 acre tract of land (hereafter referred to as Six Tank Farm).

The refinery was built near a Continental Oil Company (hereafter referred to as Conoco) Tank Farm,[1] originally established to receive and store crude oil piped by Continental Pipe Line Company from oil fields in Starr County, Texas.[2] Plaintiff purchased crude oil as needed from Conoco. Until 1950, when plaintiff was ready to refine, crude oil was drawn from the Conoco Tank Farm and run through one of two pipelines owned by Continental Pipe Line Company leading to the District's oil docks until it reached a point where it was diverted through a pipeline, owned by plaintiff, to storage tanks on the Main Site, after which it was refined by plaintiff. However, on June 10, 1950, plaintiff leased the use of one of Conoco's storage tanks for storage of crude oil and constructed its own pipeline from that tank to the Main Site so that oil could be acquired, when needed, by merely sucking it directly from the leased tank to the Main Site. On February 20, 1951, plaintiff leased the use of two other Conoco Tank Farm storage tanks for storage of refined petroleum products and constructed additional pipelines to pump petroleum products between the Main Site and such storage tanks. Refined petroleum products were stored in the storage tanks on the Main Site on the Six Tank Farm or on the Conoco Tank Farm. These storage tanks were used also for blending of the refined products as a part of the refining operations.

Movement A consisted of the crude oil purchased from Conoco and drawn to the Main Site for refining either (1) through Conoco's oil dock pipeline and plaintiff's diversion pipeline (prior to 1950) or (2) directly through plaintiff's pipeline from the Conoco Tank Farm.

Movement B consisted of the movement of refined petroleum products from the Main Site to the Conoco Tank Farm.

Movement C consisted of the movement of refined petroleum products by a 2,000-ft. pipeline owned by plaintiff (over property owned by the District) from the Main Site to the Six Tank Farm.

Movement D consisted of the return of refined petroleum products from the Six Tank Farm to the Main Site, en route to the oil docks for loading, or for blending.

Movement E consisted of the movement of refined petroleum products by an 800-ft. pipeline owned by plaintiff (over the District's land) from storage tanks on the Main Site and from a pump on the Main Site, which picked up oil piped from the Six Tank Farm, to the oil docks.

It is not necessary to set out the statute under which the tax was assessed, 26 U.S.C.A. § 3460. It levies a tax upon *all* transportation of crude petroleum and liquid products thereof by pipeline except those exempted under subdivision (c), reading as follows:

"(c) (as added by Sec. 616 of the Revenue Act of 1942, c. 619, 56 Stat. 798) Exempt transportation.) For the purposes of this section, the term 'transportation' shall not in-

---

1. The Conoco Tank Farm and the Main Site were separated by approximately 40 feet of land owned by the District, dedicated, and later used, as a highway.

2. This movement of oil constituted taxable transportation under the statute but is not in question in this case.

clude any movement through lines of pipe within the premises of a refinery, a bulk plant, a terminal, or a gasoline plant, if such movement is not a continuation of a taxable transportation. The crossing of rights-of-way, streets, highways, railroads, levees, or narrow bodies of water, in connection with such a movement, shall not of itself constitute such movement as being 'transportation.' "

Plaintiff contends that each movement (A, B, C, D, and E) comes within the foregoing exemption; defendant that it does not. The history of the act and decisions construing it before [3] and after [4] the amendment of 1942 will be found in United States v. Pan American Refining Co., 5 Cir., 219 F.2d 685, 691, in which the court said:

"We think that * * * the language adopted by Congress in paragraph (c) * * * was intended * * * to exclude from the term 'transportation' local movements controlled by a refinery as a part of its integrated refining and loading operation so long as they occur in its premises, however owned."

After discussion of the cases, defendant's counsel frankly says:

"It is clear from these cases that, what is encompassed by the phrase 'within the premises of a refinery' is essentially a question of fact for the trial court to decide. The test to be applied by the trial court in determining the question is far from clear and to dissect the decisions of the trial and appellate courts in the Republic and Pan American cases would serve no useful purpose. We believe that the decisions show an uncertainty as to whether or not a functional or a geographical approach to the definition of 'within the premises of a refinery' ought to be adopted."

 I find as a fact that each movement in question here, whether viewed from a functional or geographic approach, was within the premises of plaintiff's refinery; that they were "local movements," controlled by the refinery "as part of its integrated refining and loading operation" on its premises. Any other holding is to ignore reality, substitute form for substance, and deny plaintiff the exemption intended by Congress.

Judgment will be for plaintiff as prayed for. The foregoing is adopted as findings of fact and conclusions of law. Counsel for plaintiff will prepare an order accordingly and transmit it to the court for entry.

The Clerk will notify counsel.

---

3. McKeever v. Fontenot, 5 Cir., 104 F.2d 326.

4. Republic Oil Refining Co. v. Granger, 3 Cir., 198 F.2d 161.