**RICHFIELD OIL CORPORATION, a corporation, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

No. 36622.

United States District Court
N. D. California, S. D.
Aug. 11, 1959.

Jack E. Woods and William J. De-Martini, Los Angeles, Cal., for plaintiff.

Lynn J. Gillard, U. S. Atty., Marvin D. Morgenstein, Asst. U. S. Atty., San Francisco, Cal., for defendant.

ROCHE, District Judge.

This is an action by plaintiff to recover taxes alleged to have been illegally assessed and collected. The taxes in question were collected pursuant to 26 U.S.C.A. § 3460 on the transportation by plaintiff of petroleum products by pipe line during taxable periods from May 1, 1950 to March 31, 1954. The facts are not disputed. Many are contained in stipulations made in the course of a pre-trial conference, dated March 5, and Stipulations of Facts, dated July 11, 1958, both of which the court adopts. The sole question presented is whether or not the disputed movements are exempt from taxation under the provisions of 26 U.S.C.A. § 3460(c).[1]

Plaintiff purchases and produces crude oil in California and transports it to its refinery near Wilmington where the oil is processed into finished products. Some of these are then transported through pipe lines from the refinery to storage tanks at plaintiff's marine terminal at Long Beach. In due course they are loaded aboard tankers owned or chartered by plaintiff and shipped to its terminal at Richmond, California. The vessels are moored at plaintiff's dock located upon land leased from Richmond (Parcel A), and by use of the vessels' pumps, petroleum products are transported through plaintiff's pipe lines across Parcel A and across a pipe line easement approximately 2400 feet in length (Parcel C), to storage tanks on property owned in fee (Parcel B). Other products are pumped into storage tanks on the leased property. As the need arises, oil

[1]. "Exempt transportation. For the purposes of this section, the term 'transportation' shall not include any movement through lines of pipe within the premises of a refinery, a bulk plant, a terminal, or a gasoline plant, if such movement is not a continuation of a taxable transportation. The crossing of rights-of-way, streets, highways, railroads, levees, or narrow bodies of water, in connection with such a movement, shall not of itself constitute such movement as being 'transportation.'"

stored on Parcel B is moved by gravity flow back across plaintiff's easement (Parcel C) to plaintiff's loading facilities on Parcel A for shipment by tank car, tank truck or barge to bulk distributing plants and smaller terminals in the area. The tank farm is operated solely for storage and neither blending nor any other process is accomplished while the oil is transported across Parcel C. The facilities on Parcels A, B and C have been operated continuously by plaintiff or its predecessors in interest since 1928. The taxes in question were laid on the movements of oil back and forth between Parcel A and the tank farm on Parcel B, i. e., the movements across Parcel C.

 If the movements involved here are to qualify for the exemption they must first be within the "premises" of the terminal. It is not the character of the legal interest in the property which determines the extent of the "premises," but rather the use or function to which the property is devoted. Pan American Refining Corp. v. United States, D.C.S.D.Tex.1953, 119 F.Supp. 698, affirmed 5 Cir., 1955, 219 F.2d 685. "Premises," as used by Congress in the exemption, comprehends the entire area devoted in the normal and customary fashion to a particular localized industrial operation. Pan American Refining Corp. v. United States, supra; Republic Oil Refining Co. v. Granger, 3 Cir., 1952, 198 F.2d 161. Hence, the court must determine whether or not the functions performed on Parcels A, B and C are part of an integrated terminal operation.

 In the Pan American case, the court's finding that pipe line movements of some two miles between the dock site loading zone and the fee property were on the "premises" was based on its characterization of the movements as "transportation in and around the refinery." The fact that blending took place in the pipes from time to time was explicitly disregarded as immaterial; the crux of the decision was a determination that local movements connecting an "integrated refining and loading operation" were on the "premises" of the refinery.

See also Port Fuel Co. v. United States, D.C.S.D.Tex.1955, 136 F.Supp. 89. The sole functions of the Richmond terminal are to receive, store and distribute oil. In a terminal, perhaps more than in a refinery, loading and unloading are an essential part of the complete operation. All such facilities at the Richmond terminal are located on Parcels A and C; functionally the latter are clearly part of the "premises." Furthermore, the physical relationship of the three parcels— the length of Parcel C is only slightly more than a half mile and both Parcels A and C are dwarfed and dominated by Parcel B—augurs for the same conclusion. The court finds that movements of oil over the easement connecting the leased and fee properties are within the "premises" of the terminal.

 Defendant contends that even if the movements took place on the "premises," they were a "continuation of a taxable transportation" and therefore taxable. It appears likely that the foregoing condition imposed by Congress on the exemption is meant to apply to cases in which the oil arrives at the perimeter of a refinery, terminal, etc., by pipe line (a taxable transportation) and then continues to move by pipe line, the only difference being that the latter is now on the "premises." In such cases, if the movement across the "premises" is to be exempt from taxation it must constitute a break and not a continuation in the transportation, i. e., the movement must have as its primary purpose an independent functional process unrelated to transportation. Southern Minerals Corp. v. United States, D.C.S.D. Tex.1956, 150 F.Supp. 646. In the instant case the oil arrives by seagoing cargo vessel, not a taxable transportation, and therefore the movements across the "premises" are literally not a "continuation of a taxable transportation." Nor are they within the spirit of the condition; the movements are basically local in character, being an integral part of the storage and loading operation of the terminal, and only incidentally related to transportation.

It is the finding of this court that the movements in question are exempt from taxation. From the Stipulation of Facts counsel may determine the amount of tax wrongfully collected and interest to which the plaintiff is entitled.

Plaintiff will submit Findings of Fact and Conclusions of Law in accordance with this opinion.