**CITIES SERVICE OIL COMPANY,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

**CITIES SERVICE OIL COMPANY,**
Plaintiff,

v.

Denis J. McMAHON, District Director of Internal Revenue, Defendant.

**CITIES SERVICE OIL COMPANY,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

United States District Court
S. D. New York.
May 5, 1960.

George H. Colin, New York City, William N. Mairs, Jr., New York City, of counsel, for plaintiff.

S. Hazard Gillespie, Jr., U. S. Atty., New York City, James McKinley Rose, Jr., Asst. U. S. Atty., New York City, of counsel, for defendant.

CASHIN, District Judge.

In these three actions, which I consolidated at the opening of trial for all purposes (Rule 42(a), Federal Rules of Civil Procedure, 28 U.S.C.), plaintiff seeks the refund of taxes which are claimed to have been unlawfully collected.

Civ. 78–377, for the sum of $22,300.99, covers taxes applicable to the period July 11, 1947, to May 31, 1951.

Civ. 94–256, for the sum of $10,666.05, covers taxes applicable to the period May 31, 1951, to April 30, 1953.

Civ. 144–57, for the sum of $13,092.27, covers taxes applicable to the period May 1, 1953, to November 30, 1955.

The Government claims the right to collect the taxes under Section 3460(a) and (b) of Title 26 U.S.C. Internal Revenue Code of 1939, or Section 4281 of Title 26 U.S.C. Internal Revenue Code of 1954. Since Section 4281 of the 1954 Act substantially re-enacted Section 3460(a) and (b) of the 1939 Act, only the relevant portions of the 1939 Act will be set out in the margin.[1]

Plaintiff claims that the activities upon which taxes were collected were exempt from such taxation under subdivision (c) of Section 3460 of the 1939 Code[2] re-enacted *in haec verba* in the 1954 Code as Section 4283.

In Linden, New Jersey, plaintiff operates a refinery. The refinery premises consisted, in July 1947 to April 1954, of approximately 46 acres. Subsequently, 26 acres of adjacent land were also acquired by plaintiff. At the refinery area, in addition to the refining equipment, there were located some storage tanks as well as docks, railway sidings, loading racks and internal pipe lines. Plaintiff also owned a tract of land, approximately 1½ miles from the refinery, known as the Tremley Tank Farm, at which are located only storage tanks and pumping facilities. The two areas are connected by 4 – 10″ pipe lines and 1 – 12″ pipe line. The 10″ pipe lines are owned, and, during the entire period under consideration, had been owned by plaintiff. Plaintiff has an easement giving it a right of way for these pipe lines over the intervening land. The 12″ pipe line has, since 1948, been owned by Texas Eastern Transmission Company from whom plaintiff has a lease. Prior to that time plaintiff had the right to all use of the pipe lines under an agreement with its then owner, the Reconstruction Finance Corporation.

For the most part the movement of petroleum taxed was as follows:

(a) Movement of incoming crude or processed oil from the dock to Tremley;

(b) Movement of crude and some finished oil between the refinery installation at Linden and the storage tanks at Tremley in both directions as part of refining operations;

(c) Movement of refined product from Tremley to Linden for shipment out by vessel, truck or tank car.

The tax upon the transportation of petroleum by pipe lines was originally contained in Section 731 of the Revenue Act of 1932, 26 U.S.C.A.Int.Rev.Acts, page 636. The exemption provision, which plaintiff seeks to take advantage of herein, was not then part of the statute. Under the law, as it then existed, it was held that purely internal pipe line movement at a refinery was subject to the tax (McKeever v. Fontenot, 5 Cir., 1939, 104 F.2d 326). To meet the harsh result of the McKeever decision, Congress enacted subsection (c) of Section 3460 of the Internal Revenue Code of 1939.

The first definitive interpretation of the exemption provision was in the case of Republic Oil Refining Co. v. Granger, 3 Cir., 1952, 198 F.2d 161. That case held exempt from the transportation tax the movement of crude oil and finished

---

1. "§ 3460. Tax

"(a) Computation and payment. There shall be imposed upon all transportation of crude petroleum and liquid products thereof by pipe line—

"(1) A tax equivalent to 4½ per centum of the amount paid for such transportation, to be paid by the person furnishing such transportation.

"(2) In case no charge for transportation is made, either by reason of ownership of the commodity transported or for any other reason, a tax equivalent to 4½ per centum of the fair charge for such transportation, to be paid by the person furnishing such transportation.
* * * *"

2. "(c) Exempt transportation. For the purposes of this section, the term 'transportation' shall not include any movement through lines of pipe within the premises of a refinery, a bulk plant, a terminal, or a gasoline plant, if such movement is not a continuation of a taxable transportation. The crossing of rights-of-way, streets, highways, railroads, levees, or narrow bodies of water in connection with such a movement, shall not of itself constitute such movement as being 'transportation'."

products between a storage area and a refining area located on noncontiguous parcels of land through pipe lines. Both parcels were owned by the taxpayer. Such movement was entirely related to the refining process.

Subsequent to the Republic Oil Refining Co. case the Court of Appeals for the Fifth Circuit, which had decided the McKeever case, followed the decision of the Third Circuit in Republic Oil Refining Co. and found that the enactment of subsection (c) of Section 3460 of the Internal Revenue Code of 1939 required the overruling of its prior McKeever decision (United States v. Pan American Refining Corporation, 5 Cir., 1955, 219 F.2d 685). In the Pan American case the taxpayer owned docksite facilities and an inland refinery. The refinery and the docksite were connected by pipe lines. The transportation of crude oil from the docksite to the refinery and the finished product from the refinery to the docksite was held exempt. Once again, the court seemed to rely upon a theory of "integrated refinery" function.

Two District Court cases, prior to 1959, also considered the exemption section under similar circumstances. These cases were Southern Minerals Corporation v. United States, D.C.S.D.Tex.1956, 150 F.Supp. 646 and Port Fuel Company v. United States, D.C.S.D.Tex.1955, 136 F.Supp. 89. In both of these cases either refining or blending of petroleum products incident to local transportation seemed significant factors impelling the exemption.

Consideration of all these cases would tend to lead to the conclusion that local movement of petroleum products by pipe lines between noncontiguous areas owned by the taxpayer where no processing whatsoever took place, would be outside the exemption under consideration.

■ To my mind, however, a mere reading of the clear words of the exemption provision indicates that no processing is necessary by the taxpayer in order to entitle him to the exemption. The terms "refinery", "bulk plant", "terminal" and "gasoline plant" are used dis-

junctively. Thus, a mere terminal operation, that is an operation where product is being stored for subsequent distribution, is just as much within the exemption as a refinery operation.

■ The decided cases, particularly the Pan American Refining Corporation case, makes it clear that transportation from a docksite to an inland facility and back to the docksite through pipe lines are not taxable. This same conclusion was reached by the District Court for the Northern District of California in the case of Richfield Oil Corporation v. United States, 1959, 175 F.Supp. 200. Thus, the type of transportation characterized under (a), (b) and (c) above are all clearly exempt from taxation.

Three other relatively minor categories of transportation are also included in the suit. These three types will be considered *seriatim*.

■ In 1949 two storage tanks were temporarily leased by plaintiff from its immediate neighbor, Sinclair Refining Company. These tanks were utilized in exactly the same manner as the tanks owned by the plaintiff on its own premises. Thus, transportation of petroleum to and from those tanks is governed by the same rule as transportation on plaintiff's own premises and are exempt from taxation.

■ In various years refined products were pumped from the Tremley Tank Farm to the property line between it and the Buckeye Pipe Line Terminal, at which point it entered pipe lines owned by Buckeye. The only transportation of oil in pipe lines under the control of plaintiff was, therefore, completely on its own premises and thus not subject to taxation.

■ In various years fuel oil was moved from plaintiff's Linden area across the property line between it and the American Cyanamid Company into tanks owned by the American Cyanamid Company some 42 feet within the property of American Cyanamid Company. While this distance is comparatively slight, it cannot in any way be said that the move-

ment was on the premises of plaintiff. For those 42 feet the pipe line was utilized as a pipe line of a common carrier and thus the tax was properly collected.

Accordingly, with the exception of this last category none of the transactions for which taxes were collected were properly taxable, and on the merits plaintiff is entitled to a refund.

■ One procedural argument advanced by the Government must, however, be met. In seeking these tax refunds administratively plaintiff, in its claims, relied on the following grounds:

"The deponent verily believes that his claim should be allowed for the following reasons: That the tax paid above was imposed on the movements of crude petroleum and products thereof through company-owned and operated pipelines occupying easements, right of way, etc., connecting the taxpayer's refinery at Linden, New Jersey, with its Tremley Tank Farm at Linden, and that such easements, etc., are a part of the Linden Refinery premises and that movements of crude petroleum and products thereof within the premises of a refinery are specifically exempt from this tax under Section 3460 of the Internal Revenue Code, TD 5190 and regulations 42, Section 130.21, 130.33, 130.26 and other relevant sections."

Probably the rather unusual wording of the claims was utilized in an attempt to bring the cases within the theory, rejected herein, that certain processing is necessary in connection with the movement to bring into play the exemption. Be that as it may, it is clear that all the relevant facts were before the Collectors when they rejected the claims and, thus, I am acting within my power in reversing the determinations even if the wording of the claims might imply a right to recovery on a different theory than the theory relied upon by me (Scovill Manufacturing Company v. Fitzpatrick, 2 Cir., 1954, 215 F.2d 567).

Settle judgments.